UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEON HENDERSON,<br><br>Defendant. | CASE NO. 23-cr-140-JNW<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |

# 1. INTRODUCTION

Defendant Leon Henderson moves to suppress evidence seized from three vehicles during searches in 2023 and challenges the validity of the underlying state search warrants. Dkt. No. 64. The Court finds that each vehicle search was independently justified under the automobile exception to the Fourth Amendment's warrant requirement. When officers have probable cause to believe a vehicle contains contraband, they may search it without a warrant. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 825 (1982). Because this well-established federal exception provides complete constitutional justification

for the searches at issue, Henderson's challenges to the state warrants—including his request for a *Franks* hearing—are irrelevant.

For the reasons explained below, the Court DENIES the motion to suppress. Dkt. No. 64.

## 2. BACKGROUND

Henderson is charged with three counts of Possession of Controlled Substances with Intent to Distribute; two counts of Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and two counts of Unlawful Possession of a Firearm. Dkt. No. 17. The charges arise from evidence seized during searches of three vehicles following Henderson's arrests in 2023.

The relevant facts, drawn from the parties' submissions and the warrant affidavits, are as follows:

### 2.1   January 2023 BMW search.

In July 2022, Henderson was arrested for a Washington Department of Corrections warrant. Dkt. No. 70-1 at 2. Just before the arrest, Seattle Police Department (SPD) officers saw Henderson drive a Chevrolet Tahoe into a gas station. *Id.* Moments later, officers observed a man, later identified as R., enter the front passenger seat of the Tahoe. *Id.* After R. got into the vehicle, officers observed Henderson reach into the back seat and pick up a black backpack. *Id.* Henderson and R. appeared to go through the contents of the backpack. *Id.* As officers approached, Henderson "started to toss unknown items into the back of the vehicle." Dkt. No. 70-1 at 3. Officers arrested Henderson and observed suspected drugs and

drug trafficking paraphernalia in the center console, including a small digital scale and small plastic baggies. *Id.* at 2. SPD impounded the Tahoe and obtained a search warrant, but the vehicle was burglarized at the impound lot before officers could execute the warrant. Dkt. No. 70-1 at 3–5.

On January 9, 2023, an SPD Detective conducted a traffic stop of Henderson, who was driving a Chevrolet Tahoe—the same vehicle Henderson was driving during the July 2022 arrest—in downtown Seattle. Dkt. Nos. 70-7 at 2; 70-8 at 3; *see* Dkt. No. 70-1 at 2. As the officer approached the vehicle, he observed marijuana. The officer seized the vehicle, which was later searched pursuant to a search warrant. *Id.* Additional controlled substances and a firearm were found. *Id.* The officer then issued an all-points bulletin for Henderson. Dkt. No. 64 at 2.

On January 25, 2023, an SPD officer located Henderson in a BMW near the Park Plaza Motel on Aurora. Dkt. Nos. 64 at 6; 70-7. Henderson drove the BMW from the hotel parking lot and parked it across the street. Dkt. No. 70-7 at 2. Henderson exited the vehicle, followed by a female associate, E.H. *Id.* Henderson got into the backseat while E.H. took the driver's seat. *Id.* After a few minutes, both individuals exited the car. *Id.* SPD officers then arrested Henderson pursuant to the January 9 bulletin. *Id.* Officers searched Henderson and found $2,770 cash in his front pants pocket kept in several individual bundles and in various denominations. Dkt. No. 70-6 at 4. Officers seized and impounded the BMW. *Id.*

On January 28, 2023, officers searched the BMW pursuant to a state search warrant. Dkt. Nos. 64-1 at 21; 70-6; 70-7. The search revealed controlled substances, including nearly 700 grams of methamphetamine, about 230 grams of

fentanyl powder, and a large quantity of fentanyl pills. Dkt. No. 70-7 at 3. Officers also found cocaine in the driver's area, a stolen pistol on the driver's floorboard, and additional contraband in a messenger-style sling bag behind the passenger seat, including an illegally modified short-barrel rifle. Dkt. No. 70-7 at 3–4.

**2.2    May 2023 Chevrolet Impala search.**

The State charged Henderson with drug trafficking crimes arising from the January searches. Henderson did not appear for court, and an arrest warrant issued. *See* Dkt. No. 64.

On May 5, 2023, officers observed Henderson in an area near the Magnolia Bridge, described as a high drug-use area, where he was seen meeting with individuals. Dkt. No. 70-8 at 4. Later that day, officers located Henderson near the trunk of a Chevrolet Impala on Capitol Hill. *Id.* An officer observed Henderson grab several bags from the trunk and then place them back in the trunk after moving things around—the officer noted that Henderson appeared to be looking for something specific. Dkt. No. 70-9 at 2. When officers tried to contact Henderson, he fled. *Id.* Officers arrested Henderson pursuant to a King County Superior Court bench warrant. Dkt. No. 70-10. As Henderson was being arrested, a female associate removed a backpack from the trunk, which officers retrieved and placed back in the vehicle. Dkt. Nos. 70-9 at 2. Officers observed a marijuana blunt in the center console area through the vehicle's windows. Dkt. No. 70-8 at 5.

During a search incident to arrest, officers found a used straw in Henderson's pocket. *Id.* at 4. Henderson stated he had ingested narcotics, and he was

transported to Swedish Hospital, where he tested positive for methamphetamine, cocaine, marijuana, and MDMA. *Id.* at 5. An officer noted that Henderson was not carrying drugs when arrested. *Id.* Officers seized and impounded the Impala.

On May 11, 2023, officers searched the Impala pursuant to a search warrant. Dkt. Nos. 70-8 at 9–10; 70-10 at 2. The search recovered drugs in the trunk, including fentanyl pills, fentanyl powder, methamphetamine, cocaine, and heroin. A stolen pistol was also found. Dkt. No. 70-10 at 2–3.

**2.3    September 2023 Mercedes Benz search.**

A federal grand jury indicted Henderson for unlawfully possessing firearms and controlled substances with intent to distribute. The indictment was based on the January 25 and May 5 investigations described above. *See* Dkt. No. 1. A warrant was issued for his arrest. *See* Dkt. No. 70-13.

On September 13, 2023, SPD officers observed Henderson in the driver's seat of a gold Mercedes Benz near a homeless encampment near the Ballard Bridge. Dkt. No. 70-13 at 2–3. Officers saw several individuals approach Henderson's vehicle and depart after brief encounters. *Id.* Officers arrested Henderson and, through the vehicle's windows, observed a marijuana bong and several bags in plain view. *Id.* at 3. Officers seized the Mercedes Benz. *Id.*

On September 17, 2023, officers searched the vehicle pursuant to a State search warrant and seized controlled substances and an iPhone. *Id.* at 3–4.

# 3. DISCUSSION

**3.1   Legal standard.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant are presumptively unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967).

The Supreme Court, however, has recognized several exceptions to the warrant requirement, including searches incident to arrest and the automobile exception. *See id.* (warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions"). The Government bears the burden of proving that a warrantless search falls within a recognized exception to the warrant requirement. *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

**3.2   The searches were justified under the automobile exception.**

The Government contends vehicle searches were justified under the automobile exception. The automobile exception permits warrantless searches when officers have probable cause to believe the vehicle contains contraband or evidence of criminal activity. *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."); *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle,

it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") As the Court explained in *Ross*, the scope of such a search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S. at 824. This exception is based on the inherent mobility of vehicles and the reduced expectation of privacy in automobiles. *California v. Carney*, 471 U.S. 386, 392 (1985).

"Probable cause" exists when, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see United States v. Steinman*, 130 F.4th 693, 710 (9th Cir. 2025). The test for probable cause is not reducible to precise definition or quantification. *Steinman*, 130 F.4th at 710. "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision." *Id*. All that is required is "the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id*.; *see also Gates*, 462 U.S. at 238 (courts must consider the "totality of the circumstances" when determining probable cause).

### 3.2.1 The January 25, 2023, BMW search was supported by probable cause based on contemporaneous observations.

On January 25, 2023, officers observed specific conduct that established probable cause to search the BMW that day. An SPD Officer watched Henderson drive the BMW from a hotel parking lot and park across the street. Henderson then exited the vehicle with a female associate, E.H., and critically, the two switched positions—Henderson moved to the backseat while E.H. took the driver's seat. Dkt.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS - 7

No. 70-7 at 2. After several minutes, both exited the vehicle. *Id.* This seat-switching behavior is a recognized indicator of concealing contraband, as it provides an opportunity to hide items from view. *See United States v. Spencer,* 1 F.3d 742, 746 (9th Cir. 1992) (discussing "concealing movements in the automobile's front seat"); *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011) (discussing the relevance of furtive movements). The location itself—near the Park Plaza Motel on Aurora Avenue—is also significant, as officers had received multiple reports from residents and business owners describing drug sales at that location. *Id.*; *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis."). And when officers arrested Henderson, they found $2,770 in cash in his front pocket, separated into multiple bundles of various denominations—a carrying method consistent with drug trafficking proceeds. *Id.*

These contemporaneous observations alone established probable cause. The fact that Henderson had been found just sixteen days earlier with over 200 grams of narcotics and a firearm in another vehicle he was driving provided additional context confirming the officers' assessment of his current behavior. *See United States v. Perkins*, 850 F.3d 1109, 1120 (9th Cir. 2017) ("A suspect's criminal history 'can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover.'") (quoting *United States v. Nora*, 765 F.3d 1049, 1059 (9th Cir. 2014)). This recent history, combined with the observed seat-switching, the bundled

cash, and the high-crime location, created far more than a fair probability that the BMW contained contraband.

### 3.2.2  The May 5, 2023, Chevrolet Impala search was justified by Henderson's observed conduct with the vehicle.

Officers had probable cause based on what they directly observed on May 5, 2023, to search Henderson's vehicle. First, officers saw Henderson at a "tiny house village" known for drug trafficking activity near the Magnolia Bridge, where he met with multiple individuals in patterns consistent with drug transactions. Dkt. Nos. 70-8 at 4; 70-9 at 2. Later that day, different officers observed Henderson at the trunk of the Chevrolet Impala on Capitol Hill, *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016) ("Probable cause may be based on the 'collective knowledge of the police.'"), where he was actively organizing items in the trunk, appearing to look for something specific, Dkt. Nos. 70-9 at 2; 70-10 at 2. When officers attempted contact, Henderson fled—evidence of consciousness of guilt that further supported probable cause. *District of Columbia v. Wesby*, 583 U.S. 48, 59 (2018) ("Unprovoked flight upon noticing the police, we have explained, is certainly suggestive of wrongdoing and can be treated as suspicious behavior that factors into the totality of the circumstances") (citation modified). Officers also observed a marijuana "blunt" in plain view through the vehicle's windows. Dkt. No. 70-8 at 5.

Most significantly, after arrest, Henderson admitted ingesting narcotics and tested positive for methamphetamine, cocaine, marijuana, and MDMA—yet no drugs were found on his person during the search incident to arrest. Dkt. No. 70-8 at 5. This critical fact—that Henderson had recently used multiple controlled

substances but carried none—created a strong inference that the drugs were stored in the vehicle where he had just been organizing items.

The totality of these observations—drug area meetings, trunk organizing behavior, flight, drug use without possession, and marijuana in plain view—established probable cause independent of any prior history. Henderson's documented pattern of storing distribution quantities of drugs in vehicle trunks (confirmed in both the January Tahoe and BMW searches) simply reinforced what the officer's contemporaneous observations already suggested.

### 3.2.3 The September 13, 2023, Mercedes Benz search was supported by observed drug trafficking activity.

On September 13, 2023, officers observed Henderson engaged in what appeared to be active drug trafficking. Officers watched as multiple individuals approached Henderson's driver's side window, spoke briefly, then returned to a nearby homeless encampment—a pattern officers recognized as "short-stay traffic indicative of the sale of narcotics." Dkt. No. 70-13 at 2–4. This occurred near a "sizeable homeless encampment" located near the Ballard Bridge, an area experiencing significant narcotics activity with frequent overdoses. *Id*.

When officers approached the Mercedes, they observed drug paraphernalia in plain view through the windows, including a bong and bags like those previously found containing narcotics. Dkt. No. 70-13 at 3. Plain view observations of drug paraphernalia alone can establish probable cause, *Texas v. Brown*, 460 U.S. 730, 742-43 (1983), but the combination of observed apparent drug transactions, drug paraphernalia in plain view, and the high-drug-activity location clearly established

probable cause, *United States v. Collins*, 827 F. App'x 721, 722–23 (9th Cir. 2020) (probable cause established where officers observed 24 grams of cannabis and digital scale in plain view during traffic stop in high drug-trafficking area).

That Henderson was arrested on a federal warrant for drug trafficking offenses—charges arising from the same pattern of vehicle-based drug dealing—provided additional support but was not necessary given the strength of the contemporaneous observations.

### 3.2.4 Henderson's challenge to "past incidents" misapprehends the totality of circumstances standard.

Henderson's contention that officers improperly relied on "past incidents" mischaracterizes both the facts and the law. First, as demonstrated above, each search was justified by substantial contemporaneous observations—seat-switching, bundled cash, trunk organizing, flight, drug use without possession, plain view contraband, and observed drug transactions.

Second, the law explicitly permits consideration of a defendant's demonstrated criminal methods when evaluating probable cause. *United States v. Perkins*, 850 F.3d 1109, 1120 (9th Cir. 2017) ("A suspect's criminal history 'can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover.'") (quoting *United States v. Nora*, 765 F.3d 1049, 1059 (9th Cir. 2014)).

Officers are not required to ignore what they have learned through legitimate law enforcement activities. When Henderson exhibits the same behaviors that

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS - 11

officers have previously observed him use to conceal drugs—organizing bags in vehicles, switching seats, meeting people in drug areas—officers may properly consider this pattern as part of the totality of circumstances. This is not impermissible reliance on past conduct but rather the appropriate use of "training and experience" by law enforcement that the Supreme Court has repeatedly endorsed. *United States v. Cortez*, 449 U.S. 411, 418 (1981).

The totality of circumstances for each search—combining strong contemporaneous observations with knowledge of Henderson's established methods—easily meets the "fair probability" required for probable cause.

### 3.3 The search incident to arrest exception provides an alternative basis for denying the motion.

The Government also argues that the vehicle searches fall within the search incident to arrest exception set forth in *Arizona v. Gant*, 556 U.S. 332 (2009). Under *Gant*, police may search a vehicle incident to a recent occupant's arrest in two circumstances: (1) when "the arrestee is within reaching distance of the passenger compartment at the time of the search," or (2) when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

*Gant*'s evidentiary rationale reflects "circumstances unique to the vehicle context [that] justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)). This reasonable belief standard is distinct from and requires less than the probable cause standard applicable to the automobile exception. As the Ninth

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS - 12

Circuit noted in *United States v. Rodgers*, the *Gant* standard "appears to require a level of suspicion less than probable cause," citing with approval the D.C. Circuit's analysis in *United States v. Vinton* that the "reasonable to believe" standard must require less than probable cause to avoid duplicating the automobile exception. 656 F.3d 1023, 1028 n.5 (9th Cir. 2011).

Henderson was arrested on warrants for drug trafficking offenses on each occasion. Given the Court's finding that probable cause existed to search each vehicle for evidence of drug trafficking under the automobile exception, it necessarily follows that *Gant's* lower "reasonable to believe" standard is also satisfied. When probable cause exists, reasonable belief exists by implication.

Henderson's contention that warrant-based arrests weaken the *Gant* analysis lacks legal foundation. *Gant* requires only that officers have reasonable belief that the vehicle contains evidence of "the offense of arrest"—the standard focuses on the substantive criminal conduct charged, not the procedural basis for the arrest. Henderson's proposed distinction would create arbitrary results where identical criminal conduct receives different Fourth Amendment treatment based solely on charging procedures, without advancing any constitutional purpose.

The search incident to arrest exception thus provides an independent and alternative justification for denying the motion to suppress.

### 3.4     Henderson has not established grounds for a *Franks* hearing.

Henderson requests a *Franks* hearing, alleging the search warrant affidavits contained false statements and material omissions. To obtain a *Franks* hearing, a

defendant must make a "substantial preliminary showing" that: (1) a false statement was deliberately or recklessly included in the warrant affidavit, and (2) the false statements were material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). "Reckless disregard for the truth" requires the affiant to have displayed a "high degree of awareness of probable falsity." *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998).

Henderson has not made the required substantial preliminary showing. Most of Henderson's challenges involve reasonable inferences drawn by the affiant or minor inaccuracies that do not demonstrate reckless disregard for the truth.

For example, Henderson challenges an officer's statement that Henderson's vehicle was seized on January 9, 2023, when the vehicle was actually registered to someone else. But the broader context shows this was a reasonable characterization of Henderson's arrest while driving the vehicle, not a deliberately false statement about ownership.

Henderson also faults the affidavit for stating that "Henderson had been contacted twice in the past year in vehicles which were believed to have been used in his criminal enterprise" without providing specific dates. Dkt. Nos. 70-6 at 3; 70-2 at 2. This is the type of general summary statement that does not constitute deliberate falsity. The affiant was summarizing Henderson's pattern of activity, not making specific factual claims requiring precise detail.

Similarly, Henderson's challenge to the affiant's statement about Henderson "acting quickly to obscure illegally possessed firearms and narcotics" fails to show reckless disregard. The affiant was drawing reasonable inferences based on

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS - 14

experience, training, and from observed behavior rather than making deliberately false statements. *See United States v. Cortez*, 449 U.S. 411, 418 (1981) (in determining whether reasonable suspicion exists, "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person").

Henderson's challenges to alleged omissions also fail. When a *Franks* challenge is based on omissions, the defendant must show the omission was deliberate or made in bad faith and that the omitted facts cast doubt on probable cause. *United States v. Johns*, 948 F.2d 599, 606-07 (9th Cir. 1991). Henderson has not met this burden. The alleged omissions—such as details about associates or the exact timing of events—do not undermine the core facts supporting probable cause.

These challenges amount to "bare assertions" insufficient to compel a *Franks* hearing. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). An affiant has no duty to include every conceivable detail, and the failure to investigate every possible angle is at most negligent. *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987).

Moreover, because the searches could have been conducted under federal exceptions to the warrant requirement, any defects in the state warrants do not require suppression. *See Steinman*, 130 F.4th at 720 ("[T]he fruits of a search conducted pursuant to an overbroad or otherwise unlawful warrant need not be suppressed if the search could have been conducted pursuant to an exception to the Fourth Amendment's warrant requirement").

**3.5   The good-faith exception provides additional support for denying the motion.**

Even if the state search warrants contained defects, the good-faith exception of *United States v. Leon* applies. 468 U.S. 897, 922 (1984). Under *Leon*, evidence obtained in objectively reasonable reliance on a search warrant is admissible even if a reviewing court later invalidates the warrant, unless the warrant was so lacking in probable cause that official belief in its validity was entirely unreasonable. *Id.* The affidavits here provided detailed factual allegations about Henderson's pattern of drug activity and were reviewed by neutral magistrates. Each warrant contained substantially more than the "bare bones" affidavit that would preclude application of the good-faith exception. *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) ("The affidavit 'must establish at least a colorable argument for probable cause' for the exception to apply.") (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)). No evidence suggests the officers knew the warrants were invalid or acted in bad faith.

And because the vehicle searches were independently justified under both the automobile exception and *Gant*, any deficiencies in the state warrants are immaterial to the suppression analysis. The federal exceptions provide complete constitutional justification for the searches, rendering Henderson's warrant challenges irrelevant to the admissibility of the evidence.

**3.6   Henderson's remaining suppression claims lack an adequate factual**

**record.**

Henderson also moves to suppress DNA evidence obtained via buccal swab and evidence from an iPhone. Dkt. No. 64 at 3. While Henderson asserts these items were seized pursuant to search warrants dated September 12, 2023 (buccal swab) and October 11, 2023 (iPhone), he provides no copies of these warrants or their supporting affidavits. *Id.* Henderson acknowledges that "only a return was provided in discovery" for the buccal swab warrant. *Id.* His sole legal argument is derivative—that these items "must be suppressed as the search and seizure of both was based on these invalid and unconstitutional searches of the three vehicles." *Id.* at 4, 17.

Without the warrants, affidavits, or any independent legal challenge beyond the derivative claim, the Court cannot evaluate whether these searches violated the Fourth Amendment. Henderson bears the burden of establishing that a constitutional violation occurred. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). His bare assertions and purely derivative argument fail to meet this burden. The motion to suppress the DNA and iPhone evidence is thus denied.

## 4. CONCLUSION

In sum, the Government has demonstrated that the vehicle searches were justified under well-established exceptions to the warrant requirement, and Henderson has failed to make the substantial showing necessary for a *Franks* hearing. Accordingly, the Court DENIES the motion to suppress in its entirety. Dkt. No. 64.

Dated this 29th day of September, 2025.

Jamal N. Whitehead
United States District Judge